**Slip Op. 00-154**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                        :
FAG ITALIA, S.p.A., FAG BEARINGS CORP., :
SKF USA Inc. and SKF INDUSTRIE S.p.A.,  :
                                        :
          Plaintiffs and               :
          Defendant-Intervenors,        :
                                        :
     v.                                 :     Consol. Court No.
                                        :     97-02-00260-S
UNITED STATES,                          :
                                        :
          Defendant,                    :
                                        :
          and                           :
                                        :
THE TORRINGTON COMPANY,                 :
                                        :
          Defendant-Intervenor          :
          and Plaintiff.                :
_____:

Plaintiffs and defendant-intervenors, FAG Italia, S.p.A., FAG Bearings Corp. (collectively "FAG"), SKF USA Inc. and SKF Industrie S.p.A. (collectively "SKF") move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews ("Final Results"), 62 Fed. Reg. 2081 (Jan. 15, 1997), as amended, Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, and Singapore; Amended Final Results of Antidumping Duty Administrative Reviews, 62 Fed. Reg. 14,391 (Mar. 26, 1997). Defendant-intervenor and plaintiff, The Torrington Company ("Torrington") also moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging certain aspects of Commerce's Final Results.

Specifically, FAG argues that Commerce erred in: (1) calculating constructed value ("CV") profit; (2) failing to match United States sales to similar home market sales prior to resorting

to CV when all home market sales of identical merchandise have been disregarded; (3) including FAG's zero-value United States transactions in its margin calculations; (4) excluding amounts for imputed credit and inventory carrying expenses in its calculation of total expenses for the constructed export price ("CEP") profit ratio; and (5) making an unlawful circumstances of sale ("COS") adjustment to its normal value ("NV") for certain advertising expenses.

SKF contends that Commerce erred in: (1) calculating CV profit; (2) calculating the CV home market credit expense rate based on home market gross unit price while applying that rate to the per unit cost of production; (3) including SKF's zero-value United States transactions in its margin calculations; and (4) failing to match United States sales to similar home market sales prior to resorting to CV when all home market sales of identical merchandise have been disregarded.

Torrington contends that Commerce erred in committing various computer programming errors that resulted in its failure to convert some of SKF's adjustments from foreign currency to United States dollars.

**Held:** FAG's USCIT R. 56.2 motion is denied in part and granted in part. SKF's USCIT R. 56.2 motion is denied in part and granted in part. Torrington's USCIT R. 56.2 motion is granted. The case is remanded to Commerce to: (1) first attempt to match FAG and SKF's United States sales to similar home market sales before resorting to CV; (2) exclude any transactions that were not supported by consideration from FAG and SKF's United States sales databases and to adjust the dumping margins accordingly; (3) include all expenses included in "total United States expenses" in the calculation of "total expenses" for FAG's CEP profit ratio; (4) remove the COS adjustment for certain advertising expenses from FAG's NV; (5) reconsider its decision to calculate SKF's home market credit expense rate based upon price and then apply that rate to cost; (6) examine the programming language for converting certain adjustments that SKF Italy reported on export prices for sales made through the foreign trade zone and through Sweden from foreign currency into United States dollars and to make appropriate corrections.

[FAG's motion is denied in part and granted in part. SKF's motion is denied in part and granted in part. Torrington's motion is granted. Case remanded.]

Dated: November 21, 2000

Grunfeld, Desiderio, Lebowitz & Silverman LLP (Max F. Schutzman, Andrew B. Schroth and Mark E. Pardo) for FAG.

Steptoe & Johnson LLP (Herbert C. Shelley and Alice A. Kipel) for SKF.

David W. Ogden, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: Mark A. Barnett, Rina Goldenberg and David R. Mason, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, Geert De Prest and Lane S. Hurewitz) for Torrington.

## OPINION

**TSOUCALAS, Senior Judge:** Plaintiffs and defendant-intervenors, FAG Italia, S.p.A., FAG Bearings Corp. (collectively "FAG"), SKF USA Inc. and SKF Industrie S.p.A. (collectively "SKF") move pursuant to USCIT R. 56.2 for judgment upon the agency record challenging various aspects of the United States Department of Commerce, International Trade Administration's ("Commerce") final determination, entitled Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews ("Final Results"), 62 Fed. Reg. 2081 (Jan. 15, 1997), as amended, Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, and Singapore; Amended Final Results of Antidumping Duty Administrative Reviews ("Amended Final Results"),

62 Fed. Reg. 14,391 (Mar. 26, 1997). Defendant-intervenor and plaintiff, The Torrington Company ("Torrington") also moves pursuant to USCIT R. 56.2 for judgment upon the agency record challenging certain aspects of Commerce's Final Results.

Specifically, FAG argues that Commerce erred in: (1) calculating constructed value ("CV") profit; (2) failing to match United States sales to similar home market sales prior to resorting to CV when all home market sales of identical merchandise have been disregarded; (3) including FAG's zero-value United States transactions in its margin calculations; (4) excluding amounts for imputed credit and inventory carrying expenses in its calculation of total expenses for the constructed export price ("CEP") profit ratio; and (5) making an unlawful circumstances of sale ("COS") adjustment to its normal value ("NV") for certain advertising expenses.

SKF contends that Commerce erred in: (1) calculating CV profit; (2) calculating the CV home market credit expense rate based on home market gross unit price while applying that rate to the per unit cost of production; (3) including SKF's zero-value United States transactions in its margin calculations; and (4) failing to match United States sales to similar home market sales prior to resorting to CV when all home market sales of identical merchandise have been disregarded.

Torrington contends that Commerce erred in committing various computer programming errors that resulted in its failure to convert some of SKF's adjustments from foreign currency to United States dollars.

## BACKGROUND

This case concerns the sixth review of the antidumping duty order on antifriction bearings (other than tapered roller bearings) and parts thereof ("AFBs") imported to the United States from France during the review period of May 1, 1994 through April 30, 1995.  On July 8, 1996, Commerce published the preliminary results of the subject review.  See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Thailand and the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews, Termination of Administrative Reviews, and Partial Termination of Administrative Reviews ("Preliminary Results"), 61 Fed. Reg. 35,713.  Commerce issued the Final Results on January 15, 1997, see 62 Fed. Reg. 2081, and the Amended Final Results on March 26, 1997, see 62 Fed. Reg. 14,391.

Since the administrative review at issue was initiated after December 31, 1994, the applicable law is the antidumping statute as amended by the Uruguay Round Agreements Act ("URAA"), Pub. L. No.

103-465, 108 Stat. 4809 (1994) (effective January 1, 1995). See Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995) (citing URAA § 291(a)(2), (b) (noting effective date of URAA amendments)).

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1516a(a) (1994) and 28 U.S.C. § 1581(c) (1994).

## STANDARD OF REVIEW

The Court will uphold Commerce's final determination in an antidumping administrative review unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994); see NTN Bearing Corp. of America v. United States, 24 CIT ___, ___, 104 F. Supp. 2d 110, 115-16 (2000) (detailing Court's standard of review in antidumping proceedings).

## DISCUSSION

I.   Commerce's CV Profit Calculation

A.   Background

For this POR, Commerce used CV as the basis for NV "when there were no usable sales of the foreign like product in the comparison market." Preliminary Results, 61 Fed. Reg. at 35,718. Commerce

calculated the profit component of CV using the statutorily preferred methodology of 19 U.S.C. § 1677b(e)(2)(A) (1994). See Final Results, 62 Fed. Reg. at 2113. Specifically, in calculating CV, the statutorily preferred method is to calculate an amount for profit based on "the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review . . . in connection with the production and sale of a foreign like product [made] in the ordinary course of trade, for consumption in the foreign country." 19 U.S.C. § 1677b(e)(2)(A).

In applying the preferred methodology for calculating CV profit, Commerce determined that "the use of aggregate data that encompasses all foreign like products under consideration for NV represents a reasonable interpretation of [§ 1677b(e)(2)(A)] and results in a practical measure of profit that [Commerce] can apply consistently in each case." Final Results, 62 Fed. Reg at 2113. Also, in calculating CV profit under § 1677b(e)(2)(A), Commerce excluded below-cost sales from the calculation which it disregarded in the determination of NV pursuant to § 1677b(b)(1) (1994). See id. at 2114.

### B. Contentions of the Parties

FAG and SKF contend that Commerce's use of aggregate data encompassing all foreign like products under consideration for NV

in calculating CV profit is contrary to § 1677b(e)(2)(A). <u>See</u> FAG's Br. Supp. Mot. J. Agency R. ("FAG's Br.") at 5-11; SKF's Br. Supp. Mot. J. Agency R. ("SKF's Br.") at 9-24. Instead, FAG and SKF claim that Commerce should have relied on alternative methodologies such as the one described by § 1677b(e)(2)(B)(i), which provides a CV profit calculation that is similar to the one Commerce used, but does not limit the calculation to sales made in the ordinary course of trade, that is, below-cost sales are not excluded from the calculation. <u>See</u> FAG's Br. at 10-11; SKF's Br. at 24-25. SKF also asserts that if Commerce's exclusion of below-cost sales from the numerator of the CV profit calculation is lawful, Commerce should nonetheless include such sales in the denominator of the calculation to temper bias which is inherent in the agency's dumping margin calculations. <u>See</u> SKF's Br. at 25-28.

Commerce responds that it properly calculated CV profit pursuant to § 1677b(e)(2)(A), based on aggregate profit data of all foreign like products under consideration for NV. <u>See</u> Def.'s Mem. in Partial Opp'n to Pls.' Mots. J. Agency R. ("Def.'s Mem.") at 9-25. Consequently, Commerce maintains that since it properly calculated CV profit under subparagraph (A) rather than (B) of § 1677b(e)(2), it correctly excluded below-cost sales from the CV profit calculation. <u>See id.</u> at 11-13. Torrington generally agrees with Commerce's contentions. <u>See</u> Torrington's Resp. to Pls.' Mots.

J. Agency R. ("Torrington's Resp.") at 7-15.


    **C.    Analysis**

    In <u>RHP Bearings Ltd. v. United States</u>, 23 CIT ___, 83 F. Supp. 2d 1322 (1999), this Court upheld Commerce's CV profit methodology of using aggregate data of all foreign like products under consideration for NV as being consistent with the antidumping statute. <u>See id.</u> at ___, 83 F. Supp. 2d at 1336. Since Commerce's CV profit methodology and FAG and SKF's arguments at issue in this case are practically identical to those presented in <u>RHP Bearings</u>, the Court adheres to its reasoning in <u>RHP Bearings</u>. The Court, therefore, finds that Commerce's CV profit methodology is in accordance with law.

    Moreover, since (1) § 1677b(e)(2)(A) requires Commerce to use the actual amount for profit in connection with the production and sale of a foreign like product in the ordinary course of trade, and (2) 19 U.S.C. § 1677(15) (1994) provides that below-cost sales disregarded under § 1677b(b)(1) are considered to be outside the ordinary course of trade, the Court finds that Commerce properly excluded below-cost sales from the CV profit calculation.


**II.   Commerce's Matching United States Sales to Similar Home Market Sales Prior to Resorting to CV**

    FAG and SKF maintain that Commerce erred in resorting to CV

without first attempting to match United States sales, that is, export price ("EP") or CEP sales, to similar home market sales in instances where home market sales of identical merchandise have been disregarded because they were out of the ordinary course of trade. See FAG's Br. at 12; SKF's Br. at 36-37. FAG and SKF maintain that a remand is necessary to bring Commerce's practice in line with the United States Court of Appeals for the Federal Circuit's ("CAFC") decision in Cemex, S.A. v. United States, 133 F.3d 897, 904 (Fed. Cir. 1998). Commerce agrees with FAG and SKF. See Def.'s Mem. at 26.

The Court agrees with FAG, SKF and Commerce. In Cemex, the CAFC reversed Commerce's practice of matching a United States sale to CV when the identical or most similar home market model failed the cost test. See 133 F.3d at 904. The CAFC stated that "[t]he plain language of the statute requires Commerce to base foreign market value [(now NV)] on nonidentical but similar merchandise [(foreign like product under the amendments to the URAA)] . . . rather than [CV] when sales of identical merchandise have been found to be outside the ordinary course of trade." Id. In light of Cemex, this matter is remanded so that Commerce can first attempt to match United States sales to similar home market sales before resorting to CV.

III. Zero-Value United States Transactions

FAG and SKF argue that in light of NSK Ltd. v. United States, 115 F.3d 965, 975 (Fed. Cir. 1997), the Court should remand the matter to Commerce to exclude their zero-value transactions from their margin calculations. See FAG's Br. at 12-13; SKF's Br. at 34-36. FAG and SKF maintain that United States transactions at zero value, such as prototypes and samples, do not constitute true sales and, therefore, should be excluded from the margin calculations pursuant to NSK. See id. The identical issue was decided by this Court in SKF USA Inc. v. United States, 23 CIT ___, Slip Op. 99-56, 1999 WL 486537 (June 29, 1999).

Torrington concedes that a remand may be necessary in light of NSK, but argues that further factual inquiry by Commerce is necessary to determine whether the zero-price transactions were truly without consideration. See Torrington's Resp. at 17-20. Torrington argues that only if the transactions are truly without consideration can they fall within NSK's exclusion. See id.

Commerce concedes that the case should be remanded to it to exclude the sample transactions for which FAG and SKF received no consideration from their United States sales databases. See Def.'s Mem. at 26-27.

Commerce is required to impose antidumping duties upon

merchandise that "is being, or is likely to be, sold in the United States at less than its fair value." 19 U.S.C. § 1673(1) (1994). A zero-priced transaction does not qualify as a "sale" and, therefore, by definition cannot be included in Commerce's NV calculation. See NSK, 115 F.3d at 975 (holding "that the term 'sold' . . . requires both a transfer of ownership to an unrelated party and consideration."). Thus, the distribution of AFBs for no consideration falls outside the purview of 19 U.S.C. § 1673. Consequently, the Court remands to Commerce to exclude any transactions that were not supported by consideration from SKF's United States sales database and to adjust the dumping margins accordingly.

**IV. Commerce's Treatment of FAG's Imputed Credit and Inventory Carrying Costs in the Calculation of CEP Profit**

**A.   Background**

In calculating CEP, Commerce must reduce the starting price used to establish CEP by "the profit allocated to the expenses described in paragraphs (1) and (2)" of § 1677a(d) (1994). 19 U.S.C. § 1677a(d)(3) (1994). Under 19 U.S.C. § 1677a(f), the "profit" that will be deducted from this starting price will be "determined by multiplying the total actual profit by [a] percentage" calculated "by dividing the total United States expenses by the total expenses." Id. at § 1677a(f)(1), (2)(A).

Section 1677a(f)(2)(B) defines "total United States expenses" as the total expenses deducted under § 1677a(d)(1) and (2), that is, commissions, direct and indirect selling expenses, assumptions and the cost of any further manufacture or assembly in the United States.

Section 1677a(f)(2)(C) establishes a tripartite hierarchy of methods for calculating "total expenses." First, "total expenses" will be "[t]he expenses incurred with respect to the subject merchandise sold in the United States and the foreign like product sold in the exporting country" if Commerce requested such expenses for the purpose of determining NV and CEP. Id. § 1677a(f)(2)(C)(i). If category (i) does not apply, then "total expenses" will be "[t]he expenses incurred with respect to the narrowest category of merchandise sold in the United States and the exporting country which includes the subject merchandise." Id. § 1677a(f)(2)(C)(ii). If neither category (i) or (ii) applies, then "total expenses" will be "[t]he expenses incurred with respect to the narrowest category of merchandise sold in all countries which includes the subject merchandise." Id. § 1677a(f)(2)(C)(iii). "Total actual profit" is based on whichever category of merchandise is used to calculate "total expenses" under § 1677a(f)(2)(C). See id. § 1677a(f)(2)(D).

FAG reported United States sales that Commerce treated as CEP

sales pursuant to 19 U.S.C. § 1677a(b), and Commerce deducted an amount for profit allocated to the expenses enumerated by 19 U.S.C. § 1677a(d)(1) and (2).  See 19 U.S.C. § 1677a(d)(3).  In the profit calculation, Commerce excluded imputed expenses and carrying costs from the "total actual profit" calculation, defined in § 1677a(f)(2)(D), and from the "total expenses" calculation, defined in § 1677a(f)(2)(C), but included them in the "total United States expenses" calculation, defined in § 1677a(f)(2)(B).  FAG objected to the omission of imputed expenses and carrying costs from "total expenses," and Commerce responded by stating the following:

> Sections [1677a(f)(1) and 1677a(f)(2)(D)] of the Tariff Act state that the per-unit profit amount shall be an amount determined by multiplying the total actual profit by the applicable percentage (ratio of total U.S. expenses to total expenses) and that the total actual profit means the total profit earned by the foreign producer, exporter, and affiliated parties.  In accordance with the statute, we base the calculation of the total actual profit used in calculating the per-unit profit amount for CEP sales on actual revenues and expenses recognized by the company.  In calculating the per-unit cost of the U.S. sales, we have included net interest expense.  Therefore, we do not need to include imputed interest expenses in the "total actual profit" calculation since we have already accounted for actual interest in computing this amount under section [1677a(f)(1)].
>
> When we allocated a portion of the actual profit to each CEP sale, we have included imputed credit and inventory carrying costs as part of the total U.S. expense allocation factor.  This methodology is consistent with section [1677a(f)(1)] of the statute which defines "total United States expense" as the total expenses described under section [1677a(d)(1) and (2)].  Such expenses include both imputed credit and inventory carrying costs.

Final Results, 62 Fed. Reg. at 2126-67.


    B.    Contentions of the parties

    FAG complains that in calculating "total United States
expenses" pursuant to 19 U.S.C. § 1677a(f)(2)(B), Commerce included
amounts for imputed credit and inventory carrying expenses, but
failed to include these amounts in its calculation of "total
expenses," as defined by 19 U.S.C. § 1677a(f)(2)(C).  See FAG's Br.
at 13-15.   FAG argues that the plain language of the statute
demonstrates that "total United States expenses" is a subset of
"total expenses" and, therefore, any expense constituting "'total
United States expenses' ([that is], expenses incurred in selling
the subject merchandise in the United States)" must also be
included in "'total expenses' ([that is], all expenses incurred in
selling the subject merchandise in the United States and the
foreign like product in the home market)."  Id. at 14-15.   FAG
argues that Commerce should not be permitted to ignore the plain
language of the statute.  See id.


    Commerce maintains that the statute does not address the use
of imputed expenses in the calculation of "total expenses" or
"total actual profit."  See Def.'s Mem. at 30.  Commerce considers
imputed selling expenses, including imputed credit and inventory
carrying costs, to be selling expenses encompassed by § 1677a

(d)(1) and (2) and, as such, includes them in the calculation of "total United States expenses." See id. at 32. Commerce, however, did not include the imputed expenses in "total actual profit" because "'normal accounting principles permit the deduction of only actual booked expenses, not imputed expenses, in calculating profit.'" Id. at 34 (citation omitted). Additionally, Commerce did not include imputed expenses in "total actual profit" and "total expenses" because "the imputed expenses were properly accounted for through the inclusion of actual interest expenses in 'total actual profit' and 'total expenses.'" Id. at 33.

Commerce also maintains that it did not include imputed expenses in "total expenses" since Commerce is required to calculate "total actual profit" on the same basis as "total expenses" pursuant to 19 U.S.C. § 1677a(f)(2)(D). See id. at 34. Commerce argues that the provision for "total expenses" merely encompasses all expenses "'which are incurred by or on behalf of the foreign producer and foreign exporter with respect to the production and sale of such merchandise,'" and if Congress had intended "that Commerce utilize the same types of expenses for both 'total United States expenses' and 'total expenses,' it would have made that intent clear." Id. at 32-33 (quoting 19 U.S.C. § 1677a(f)(2)(C)). Torrington generally agrees with Commerce. See Torrington's Resp. at 20-23.

### C.    Analysis

In <u>SNR Roulements v. United States</u>, 24 CIT ___, ___, Slip Op. 00-131, 2000 WL 1562867, at *___ (October 13, 2000), this Court determined that "Commerce improperly excluded imputed inventory and carrying costs from 'total expenses' when it had included these expenses in 'total United States expenses'" because such action was contrary to the plain meaning of 19 U.S.C. § 1677a.  This Court remanded the issue to Commerce, directing it to "include all expenses included in 'total United States expenses' in the calculation of 'total expenses.'" <u>Id.</u>

Since Commerce's methodology and FAG's arguments in this case are practically identical to those presented in <u>SNR Roulements</u>, the Court adheres to its reasoning in <u>SNR Roulements</u>.  The Court, therefore, finds that Commerce's methodology was not in accordance with law.  The Court remands this issue to Commerce to include all expenses included in "total United States expenses" in the calculation of "total expenses."

## V.    Commerce's Circumstances of Sale Adjustment for Certain Advertising Expenses

### A.    Background

In response to section C of Commerce's questionnaire, FAG stated that all United States advertising expenses were not

"specifically" related to the subject merchandise and, therefore,
were properly classified as indirect selling expenses. FAG's Resp.
Sec. C Questionnaire (Sept. 27, 1995) (Case No. A-475-801) at 43-
44. FAG also stated that indirect selling expenses incurred in the
country of manufacture included "printing costs associated with the
publication of catalogs and technical data material in English,"
and reported these expenses as an element of its indirect selling
expense calculation. Id. at 51.

During the administrative review, Torrington argued that the
publication expenses reported in the indirect selling expense
calculation should have been deducted from CEP. See Final Results,
62 Fed. Reg. at 2125. In the Final Results, Commerce stated the
following with respect to Torrington's argument:

> Based on the record, we determined that the expenses in
> question are not deductible from CEP under [19 U.S.C. §
> 1677a(d)] . . . . However, the record suggests that . .
> . [the] printing costs associated with the publication of
> the catalogs and technical materials in English, is a
> direct advertising cost that FAG OH assumed on behalf of
> FAG Italy's U.S. affiliate for sales to its unaffiliated
> customers in the United States. The [Statement of
> Administrative Action] at 828, requires that [Commerce]
> make a [circumstances of sale] adjustment (rather than a
> CEP adjustment) for "assumptions of expenses incurred in
> the foreign country on sales to the affiliated importer."

Id. To account for the costs associated with publishing catalogs
and technical manuals, Commerce made an upward adjustment to FAG's
NV as a COS adjustment under 19 U.S.C. § 1677b(a)(6)(C)(iii). See
id.

B.    Contentions of the Parties

FAG maintains that the issue "is not whether a COS adjustmenct can properly be made for an indirect expense" since "[t]here is a wealth of precedent to the effect that COS adjustments are only used to offset direct selling expenses."  FAG's Br. at 17.  FAG identifies the crux of the issue as "whether the expenses related to the catalogs and technical manuals are direct or indirect."  Id.

FAG states that direct advertising is defined as "advertising directed at the customer's customer, and indirect advertising has likewise always been defined as advertising directed at the initial customer."  Id.  Because the catalogs and technical materials were directed at FAG's customers, FAG reported the expenses associated with them as indirect.

FAG maintains that nothing on the record supports Commerce's assertion in the Final Results that the advertising expenses are direct.  To the contrary, FAG points to Commerce's treatment of the same publication expenses as indirect with respect to FAG's home market sales as evidence that similar expenses for its United States sales are indirect as well.  See FAG's Br. at 18 (citing FAG's Resp. Sec. B Questionnaire (Sept. 27, 1995) (Case No. A-475-801) at 35-37).  Accordingly, FAG asks the Court to remand this issue to Commerce to "clarify and elaborate on what facts on the

record 'suggest' that FAG's expenses related to publishing catalogs and technical manuals are direct rather than indirect expenses," and if Commerce is unable to point to facts supporting its determination, the Court should instruct Commerce to remove the upward COS adjustment to FAG's NV. FAG's Br. at 19. FAG is opposed to any effort by Commerce to make an adjustment to CEP, arguing that the only issue before the Court is whether the COS adjustment to NV was proper. See FAG's Reply Supp. Mot. J. Agency R. ("FAG's Reply") at 14.

Commerce reviewed the record and the Final Results and concluded that "it did err in its treatment of these advertising expenses in the" Final Results. Def.'s Mem. at 37. Specifically, "Commerce agrees that the record does not support its decision to treat these advertising expenses as direct expenses" and believes that it should have treated them as "indirect expenses since the record indicates that the materials were published for FAG's customer, not the customer's customer." Id. (citing FAG United States Sales Verification Report (Apr. 18, 1996) (Case No. A-475-801) at 9). Commerce also believes that "because these expenses were associated with economic activity in the United States," they should have been deducted from CEP pursuant to 19 U.S.C. § 1677a(d)(1). Id.

Commerce also concedes that it erred in assuming, as facts

available, that all of the indirect selling expenses reported by FAG were advertising expenses because of FAG's deficiencies in reporting. See Def.'s Mem. at 37. Commerce recognizes, however, that FAG did not provide proper information because it was reporting the advertising expense in accordance with Commerce's questionnaire instructions. See id. Commerce requests a remand to obtain information to segregate the advertising expenses from other expenses reported in the indirect selling expense field that are not associated with United States economic activities. See id. at 38.

### C.   Analysis

Section 1677a(d)(1) of Title 19 of the United States Code provides that expenses incurred in selling subject merchandise in the United States shall be deducted from CEP. Deductions for these expenses include both direct and indirect expenses "associated with economic activities occurring in the United States." Statement of Administrative Action, H.R. Doc. 103-316, at 823 (1994), reprinted in 1994 U.S.C.C.A.N. 4040. Here, although the expenses associated with the publication of catalogs and technical materials in English were treated as having been borne by FAG's affiliates in Germany, they were actually related to advertising by FAG USA to its unaffiliated customers. See Def.'s Mem. at 36-37; FAG's Br. at 17; FAG United States Sales Verification Report (Apr. 18, 1996) (Case

No. A-475-801) at 9 ("FAG focuses its advertising on distributors by publishing product catalogues."); FAG's Resp. Sec. C Questionnaire (Sept. 27, 1995) (Case No. A-475-801) at 51 ("costs incurred . . . in Germany to support the sale of these bearings to customers in the United States . . . [include] printing costs associated with the publication of catalogs and technical data material in English."). Thus, if the publication expenses are associated with economic activity in the United States, Commerce may deduct them from CEP pursuant to 19 U.S.C. § 1677a(d)(1).

Commerce chose not to make any adjustment to CEP for the publication expenses, stating in the Final Results that "based on the record, . . . the expenses in question are not deductible from CEP." 62 Fed. Reg. at 2125. Based on Commerce's assertion, FAG argues that it is "completely improper for [Commerce] to request a remand now to deduct these expenses from CEP when the record shows that such a deduction is entirely contrary to Commerce's administrative determination." FAG's Reply at 14. Additionally, Torrington argues that Commerce's COS adjustment was supported by substantial evidence because the expenses at issue qualified as "'assumptions of expenses incurred in the foreign country on sales to the affiliated importer'" within the meaning of 19 U.S.C. § 1677b(a)(6)(C)(iii), a position contrary to its position during the administrative review. Torrington's Resp. at 25; Final Results, 62

Fed. Reg. at 2125 ("Torrington contends that [Commerce] should make a deduction to CEP . . . .").

The Court disagrees with Torrington's argument that Commerce's decision to make a COS adjustment is supported by substantial evidence. Commerce's decision to make a COS adjustment was premised on its conclusion that the expenses were direct expenses, a conclusion that is not supported by the evidence on the record and that Commerce now repudiates. See Final Results, 62 Fed. Reg. at 2125 ("printing costs associated with the publication of catalogs and technical material in English[] is a direct advertising cost."). None of the parties point to any evidence that demonstrates that the publication expenses are direct; to the contrary, FAG points to evidence that tends to show the expenses are indirect. See FAG United States Sales Verification Report (Apr. 18, 1996) (Case No. A-475-801) at 9 ("FAG focuses its advertising on distributors by publishing product catalogues.").

Furthermore, the Court agrees with FAG's contention that Commerce is not permitted to make an adjustment to CEP. Commerce considered and rejected the possibility of making a CEP adjustment and cannot now reopen the record in order to make such a finding upon finding that its COS adjustment is not supported by record evidence. Accordingly, the Court remands this issue to Commerce to remove the COS adjustment for the advertising expenses from FAG's

NV.


**VI.  CV Home Market Credit Expense Rate**

SKF contends that Commerce erred in "calculating a CV home market credit expense rate based on price, but applying that rate to cost."  See SKF's Br. at 29.  Specifically, SKF contends that Commerce "computed a credit expense rate based on the ratio of home market credit expense to home market gross unit price" when "calculating an average home market credit expense to be deducted from CV."  Id.  Commerce applied the home market credit expense rate to the COP, rather than price, of each model to derive a per unit amount for home market credit expense.  See id.  Commerce then deducted the per unit expense amount in the CV calculation.  See id.  SKF maintains that applying a home market credit expense rate based upon price to cost is contrary to the "fundamental principle inherent in all antidumping rate and factor calculations, that the calculation of the rate and its application must be consistent."  SKF's Reply Supp. Mot. J. Agency R. at 20.

Commerce agrees that it erred "by calculating a home market credit expense rate based upon price but applying that rate to cost," and asks the Court to remand the matter for recalculation of SKF's home market credit cost.  Def.'s Mem. at 38.  Torrington, however, maintains that Commerce's methodology is reasonable and

should be affirmed.  See Torrington's Resp. at 34-36.

In light of the foregoing, the Court remands this issue to Commerce to reconsider its decision to calculate the home market credit expense rate based upon price and then apply that rate to cost.

## VII. Commerce's Computer Programming Errors

Torrington alleges that Commerce made "various clerical or methodological errors in connection with certain sales reported by SKF Italy."  Torrington's Mem. Supp. Mot. J. Agency R. ("Torrington's Mem.") at 2.  Specifically, Torrington alleges that Commerce made errors in the computer "programming language for converting certain adjustments that SKF-Italy reported for export prices for sales made through a foreign trade zone and through Sweden from foreign currency into U.S. dollars."  Torrington's Reply to Resps. of  Def. & SKF ("Torrington's Reply") at 1-2.

Commerce "reviewed the programming language and agrees that it unintentionally did not convert the adjustments from foreign currency into U.S. dollars" and requests a remand to "examine the programming language and make appropriate corrections."  Def.'s Mem. at 38-39.

SKF maintains that Commerce "is best situated to determine

whether its computer program indeed embodies the clerical errors alleged by Torrington and whether a remand for correction of such alleged errors is necessary or appropriate." SKF's Resp. to Torrington's Mem. at 3. If a remand is necessary, SKF suggests alternative programming language, which Torrington has agreed is accurate. See id. at 3; Torrington's Reply at 2-3.

In light of the foregoing, the Court remands this issue to Commerce to examine the programming language for converting certain adjustments that SKF Italy reported on export prices for sales made through the foreign trade zone and through Sweden from foreign currency into United States dollars and to make appropriate corrections.

## CONCLUSION

The Court remands this case to Commerce to: (1) first attempt to match FAG and SKF's United States sales to similar home market sales before resorting to CV; (2) exclude any transactions that were not supported by consideration from FAG and SKF's United States sales databases and to adjust the dumping margins accordingly; (3) include all expenses included in "total United States expenses" in the calculation of "total expenses" for FAG's CEP profit ratio; (4) remove the COS adjustment for certain advertising expenses from FAG's NV; (5) reconsider its decision to

calculate SKF's home market credit rate expense based upon price and then apply that rate to cost; (6) to examine the programming language for converting certain adjustments that SKF Italy reported on export prices for sales made through the foreign trade zone and through Sweden from foreign currency into United States dollars and to make appropriate corrections.

_____

NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    November 21, 2000
           New York, New York